IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARTER CASH,

      Plaintiff,

v.                                                                No. CIV 15-506 JAP/LF

LOCKHEED MARTIN CORPORATION
and LOCKHEED MARTIN TRAINING
SOLUTIONS,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

DEFENDANTS'[1] AMENDED MOTION FOR SUMMARY JUDGMENT (Motion) (Doc. No. 35) seeks dismissal of all of Plaintiff Carter Cash's claims under Fed. R. Civ. P. 56. PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S [AMENDED] MOTION FOR SUMMARY JUDGMENT (Response) (Doc. No. 37) argues that there are genuine disputes of material fact that preclude summary judgment. DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (Reply) (Doc. No. 39) again urges the Court to grant summary judgment in favor of Defendants. After careful consideration of the pertinent law, pleadings, briefs, and attachments, the Court will grant summary judgment in favor of Defendants and will dismiss Plaintiff's claims, with prejudice.

**Plaintiff's Claims**

      This is an employment discrimination case. Plaintiff brings claims against his employer of disability discrimination in violation of the Americans with Disabilities Act (ADA) (Count I), retaliation in violation of Title VII (Count II), and retaliation in violation of the False Claims

---

[1] Defendants state that Lockheed Martin Training Solutions is not a proper party and is not an entity that employed Plaintiff. Motion at 1 n.1. Plaintiff did not respond to Defendants' position.

Act, 31 U.S.C. § 3730 (Count III). COMPLAINT FOR EMPLOYMENT DISCRIMINATION ON THE BASIS OF DISABILITY & RETALIATION IN VIOLATION OF 31 U.S.C[.] § 3730 (Complaint) (Doc. No. 1).

Defendants deny any form of discrimination or retaliation against Plaintiff, and contend that Defendant Lockheed Martin Corporation (Lockheed) terminated Plaintiff's employment for legitimate, nondiscriminatory and nonretaliatory reasons. Thus, Defendants believe summary judgment on Plaintiff's claims is warranted.

## Background[2]

### *Plaintiff's Employment at Lockheed*

In February 1996, Lockheed hired Plaintiff as an Electronic Technician III in its TSG Group at the Kirtland Air Force Base in Albuquerque, New Mexico. Plaintiff held that position until late April 2013, when his employment was terminated. An Electronic Technician III is a higher level position than an Electronic Technician I or II, although there is some overlap of work within the three categories of Electronic Technicians.

---

[2] The facts in the Background section are undisputed unless otherwise noted. Plaintiff challenges a number of Lockheed's Undisputed Material Facts (UFs). Plaintiff's attempt to raise genuine disputes of material fact is proper insofar as Plaintiff disputes specific portions of Defendant's numbered allegations. But, Plaintiff includes within the same fact number Plaintiff's own or additional allegations. This approach violates the Court's Local Rules and unnecessarily complicates the summary judgment process. *See* D.N.M. LR-Civ 56.1(b) (requiring  a non-movant to separately identify additional facts by letter rather than by number). Plaintiff sometimes "admits" facts that Defendant did not assert. *See, e.g.,* UF No. 10. In addition, there are a number of times where Plaintiff overstates the evidence. *See* Plaintiff's UF No. 5 (the cited portions of Plaintiff's deposition, at 51-53, do not support the allegation that multiple "co-workers and supervisors" started harassing Plaintiff after he began wearing hearing aids); *Id.* UF No. 11 (nothing in the cited portions of Plaintiff's deposition, at 73–75, refers to "Air Force training missions" that Plaintiff claims partially explain why he could not perform PMs in the day); *Id.* UF No. 11 (the cited portions of Plaintiff's deposition do not support the allegation that Plaintiff "never refused to assist the customer."); *Id.* UF No. 13 (the cited portions of Mr. Hutchinson's deposition, at 41–42, do not support Plaintiff's allegation that "most of the crew believed Plaintiff's hearing issue was" selective") (emphasis added); *Id.* UF No. 17 (the cited portions of Plaintiff's deposition, at 158–59, do not support the allegation that a specific conversation occurred when Plaintiff was on a Performance Improvement Plan); *Id.* UF No. 23 (Plaintiff disputes the allegations in Defendant's UF No. 23 that describe Defendant's investigation, but Plaintiff presents no evidence tending to show that Defendant did not investigate Plaintiff' complaint). While the Court understands the role of advocacy in litigation, counsel should accurately describe the evidence.

Plaintiff's duties included checking the ATOMS database system for open work orders that designate and prioritize work to be done on aircraft simulators, completing the work orders, testing the simulators, and fixing the simulators as needed. Plaintiff also performed preventive maintenance inspections (PMs).

*Discharge of Employment in 2008*

In 2007, James Hutchinson, the Maintenance Manager at Kirtland, became Plaintiff's supervisor. As Maintenance Manager, Mr. Hutchinson managed the workforce for the operation and maintenance of various simulators used by the Air Force at Kirtland.

In 2008, Lockheed terminated Plaintiff's employment for mischarging his time. In 2009, Lockheed reinstated Plaintiff in accordance with a "Last Chance Agreement." The parties dispute whether Lockheed had legitimate grounds for the 2008 termination. Mr. Hutchinson was Plaintiff's manager in 2008 and was involved in the 2008 termination decision. Mr. Hutchinson testified that he was not happy that Plaintiff was reinstated in 2009, because he believed the reinstatement would show that Lockheed "would let that behavior continue." James Hutchinson Dep. at 79 (Doc. No. 37–2). Mr. Hutchinson also testified that Plaintiff generally performed well during the following year. Moreover, there is no record that Plaintiff had performance issues until sometime in late 2011 to mid-2012.[3] The 2008 termination of employment is not at issue in this lawsuit.

*July 2012 Written Warning*

On July 11, 2012, Plaintiff received a written warning from Mr. Hutchinson concerning various performance-related issues occurring in late 2011 through June 2012. The written warning states that Mr. Hutchinson had counseled Plaintiff about the company's expectations on

---

[3] Lockheed states that "Plaintiff continued to receive verbal and written performance warnings during his second period of employment after his reinstatement." Motion at 3 UF No. 8. But, the evidence shows that Lockheed took no formal disciplinary action against Plaintiff until the July 2012 written warning.

May 28, 2012, and "prior to that on several different occasions." July 2012 written warning
(Doc. No. 35–2). The written warning informed Plaintiff of the following problems with his
performance and/or complaints about his performance from crew members: 1) failing to "pre-
flight [a] device for training" (November 2011); 2) failing to assist the crew "with a simulator
reboot" and failing to "complete the debrief" (December 2011); 3) turning his hearing aids down
or off at work, turning down his telephone ringer, and failing to answer common phones (2011);
4) working on "preflighting [a] device" instead of completing "priority" work, ignoring a co-
worker's request for assistance of working on a "priority 1 simulator down discrepancy," and
failing to follow instructions to "work the discrepancy;" (January 2012); 5) working on PMs
while "lower level technicians interfaced with engineering on a high level maintenance task" and
failing to perform appropriate "higher-level complex tasking" (January 2012); 6) refusing to
perform a task as directed by the "Assistance Maintenance Lead" (May 2012); 7) spending "a
majority" of time working lower level tasks leaving complex tasks to lower level technicians (no
specific date); and 8) failing to achieve adequate work productivity or "output" in comparison
with other crew members (June 21, 2012). *Id.*

The July 2012 written warning gave detailed explanations of Lockheed's expectations for
improvement and advised Plaintiff that if his performance did not significantly improve, he could
face disciplinary action, up to and including termination.

While Plaintiff does not deny that Mr. Hutchinson received numerous complaints about
Plaintiff's work in 2011 to 2012, Plaintiff alleges that complainants were actually harassing him
for being hard of hearing and that Mr. Hutchinson solicited complaints from co-workers about
Plaintiff. *See* Plaintiff's UF Nos. 9, 10. In contrast, Mr. Hutchinson testified that when co-
workers verbally complained to him about Plaintiff's work performance, Mr. Hutchinson, in

4

accordance with instructions from Human Resources, requested that the co-workers provide a follow-up email documenting the complaints, which at least three co-workers did. Defendant's UF No. 10. Mr. Hutchinson also worked part of a shift with Plaintiff to determine if the employee complaints about Plaintiff were valid and observed a number of performance issues in relation to Plaintiff's work.

<u>*Plaintiff's Hearing Loss and 2012 Audiologist's Letter*</u>

Plaintiff has suffered some hearing loss for many years. At an unidentified time in 2011, Plaintiff began wearing hearing aids at work.

Plaintiff told Mr. Hutchinson that he sometimes turned down the volume of his hearing aids at work. Plaintiff's UF No. 17. In response to whether he told people at work that he did not need the hearing aids or that he could hear better without them, Plaintiff explained: "'I said – I hear them better with them turned all the way down than I do without them,' which is fact." Plaintiff's Dep. at 158 (Doc. No. 37–1).

In about August 2012, after receiving the July 2012 written warning, Plaintiff requested that an audiologist provide a letter to Lockheed's Human Resources (HR) Department regarding his hearing loss. *See id.* at 25. According to Plaintiff, the purpose of submitting the letter to HR "stemmed from the fact that I was written up by James Hutchinson … for turning my hearing aids off."[4] *Id.*

Lisa Hardin, Lockheed's HR Representative, received the audiologist's letter regarding Plaintiff's hearing loss. The letter is addressed "To Whom it May Concern" and notes its purpose is to "serve to educate [Plaintiff's] employer and co-workers about his hearing loss." August 13, 2012 Letter (Doc. No. 37–3). The letter states that Plaintiff has a significant hearing loss and that

---

[4] Notably, Plaintiff did not testify that the purpose of obtaining the audiologist's letter was to improve communications between him and his co-workers or to assist him with his hearing impairment.

while "hearing instruments" are helpful, they do not return Plaintiff's hearing to normal. The letter lists a number of strategies to use at work for successful communication with a hearing impaired individual. This included not speaking from another room, not speaking with one's back to the individual, and not speaking while walking away from the person. Plaintiff admits that the August 2012 letter was the only request he made to Lockheed regarding his hearing loss.

After receipt of the letter, Ms. Hardin conferred with Mr. Hutchinson about the strategies listed by the audiologist, which Mr. Hutchinson agreed to use. Mr. Hutchinson considered the audiologist's letter to be a request to use "common-courtesy stuff," like making sure people hear you and getting their attention before speaking. Hutchinson Dep. at 46. After discussing the letter with Ms. Hardin, Mr. Hutchinson advised Plaintiff's team members of the suggested communication strategies. He described the crew members' response to the strategies as being "for the most part … okay," and said that they agreed to try the strategies. *Id.* at 42. However, Mr. Hutchinson noted that some crew members "kind of hemmed and hawed" in response to hearing the strategies because of their feelings or opinions that Plaintiff's hearing was selective. *Id.*

Plaintiff contends that after Lockheed received the audiologist's letter in August 2012, Plaintiff's crew chief, Booker Smith, started harassing him. Plaintiff alleges that Mr. Smith would turn his back to Plaintiff while speaking and conducting a meeting, would start speaking to Plaintiff and then lower his voice, and would "call out to Plaintiff and then lower his voice or walk away while speaking." Plaintiff's Dep. at 51–53. Plaintiff claims to have telephoned Ms. Hardin twice to complain about Mr. Smith's "harassing" conduct. *Id.* Plaintiff states that Ms. Hardin said she would check into it but that she "never did." *Id.* at 53.

*January 2013 Written Warning*

Plaintiff received another written warning from Mr. Hutchinson, dated January 31, 2013. The second warning included the "expectations" listed in the July 2012 written warning and described either Plaintiff's satisfaction of some of the expectations or his continued performance issues. January 2013 written warning (Doc. No. 35–2). The second warning also compared Plaintiff's work output to that of his crew members for the period of July 11, 2012 to December 13, 2012. Mr. Hutchinson observed that Plaintiff was "still the least productive crew member ...." *Id.* The January 2013 written warning states "[t]he concern of management in regards to your performance is the lack of productivity compared to your crew members and the amount of time charged to supporting the contract without the supporting documentation of work performed." *Id.* The warning advised Plaintiff that the number of work orders that he worked on compared to crew members was "substantially lower." *Id.*

*2013 Performance Improvement Plan and Termination of Employment*

Due to Plaintiff's continued unsatisfactory performance, Mr. Hutchinson, in consultation with Ms. Hardin and other members of the Corrective Action Board, decided to place Plaintiff on a 90-day Performance Improvement Plan (PIP). The intent of the PIP was to ensure that Plaintiff's performance improved to a satisfactory level and to inform Plaintiff of management's expectations for his position. The warning also stated that Lockheed could take further disciplinary action, including termination, against Plaintiff if, at any time during the PIP, Plaintiff failed to meet the expectations of the PIP. *Id. See also* April 2013 PIP (Doc. No. 35–1).

In 2013, at some point after Plaintiff was warned about work productivity issues, Plaintiff searched for and "found evidence" in the pertinent database showing that three co-workers charged time on work orders that they did not perform. Plaintiff's Dep. at 73–76. Plaintiff told

7

Mr. Hutchinson during a meeting monitoring his PIP that co-workers were inflating their hours and that "[e]verbody is doing it." Hutchinson Dep. at 27–28. Plaintiff did not provide any specifics about co-workers allegedly inflating their hours, and Mr. Hutchinson had no data to prove inflation of hours. *Id.* at 28. However, later during Plaintiff's grievance of the termination decision, Mr. Hutchinson noticed some overlaps of man-hours for work orders and he sent a correction to the union regarding the hours. *Id.* at 30. The overall man-hours count remained the same but the man-hours were reduced for certain individuals. *Id.* Mr. Hutchinson concluded that in some instances, employees may have overlapped by 15 minutes on certain work orders and that the employees had not realized there were overlapping times, which required the corrections. *Id.* at 31. However, these corrected times did not change the outcome of Plaintiff's PIP. *Id.* at 32, 50.

On March 4, 2013, during Plaintiff's PIP, Plaintiff sent an email to Ms. Hardin for the first time regarding his hearing trouble and complaints about co-workers' communications with him.[5] *Id.* at 179; Hardin Aff. ¶ 6 (Doc. No. 35–3). Plaintiff represents that before contacting Ms. Hardin, he spent a day in the Emergency Room with complaints of ringing in his ear, due to Steve Schray, a safety engineer, having yelled in Plaintiff's ear at work on March 1, 2013. Plaintiff's Dep. at 179; Hutchinson Dep. at 54; Hardin Aff. ¶ 6. Plaintiff voiced complaints to Ms. Hardin regarding Mr. Schray's yelling in his ear and about Mr. Smith's conduct in mouthing words to Plaintiff without speaking to him and turning his back on Plaintiff during meetings. Plaintiff's Dep. at 179; Hardin Aff. ¶ 6.

---

[5] Plaintiff's testimony about his communications with Ms. Hardin is inconsistent. At one point, he stated that he telephoned Ms. Hardin twice about complaints about Mr. Smith's conduct as it related to Plaintiff's hearing problems. Plaintiff's Dep. at 51. Plaintiff provided no detail as to the dates or contents of the alleged telephone communications with Ms. Hardin. Then, Plaintiff agreed that he had contacted Ms. Hardin for the first time "directly" via email on March 4, 2013 about his hearing trouble. *Id.* at 179.

Ms. Hardin immediately contacted Plaintiff to obtain more information. Hardin Aff. ¶ 6. She promptly investigated the allegations and spoke to both Mr. Schray and Mr. Smith, but she found no discrimination or inappropriate conduct. Ms. Hardin also talked to two witnesses who represented that Mr. Schray had slightly raised his voice to Plaintiff when Plaintiff did not initially respond to Mr. Schray's greeting. *Id.* ¶ 7. Mr. Smith denied Plaintiff's allegations against him, and there were no witnesses to corroborate or refute the allegations. *Id.* Ms. Hardin also asked Plaintiff if he needed any accommodation for his hearing impairment. Plaintiff did not request an accommodation and told Ms. Hardin that he was "not that deaf." *Id.*

The 2013 PIP listed five areas of work for which Plaintiff had to demonstrate improvement. Plaintiff improved in four of the five areas but continued to fail in the area of productivity. April 2013 PIP; Plaintiff's Dep. at 175. Lockheed terminated Plaintiff's employment based on Plaintiff's failure to complete the PIP. Plaintiff's Dep. at 178; Hardin Aff. ¶ 9. Plaintiff grieved the termination but the grievance was denied. Plaintiff's Dep. at 178.

### Summary Judgment Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts

showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

## Discussion

I.    <u>Discrimination under the Americans with Disabilities Act (ADA)</u>

The ADA provides in part that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Selenke v. Med. Imaging of Colo*., 248 F.3d 1249, 1261 (10th Cir. 2001) (quoting 42 U.S.C. § 12112(b)(5)(A)).

Plaintiff's ADA disability discrimination claim is based on allegations of 1) failure to accommodate; 2) hostile work environment; and 3) discriminatory discharge. *See* Complaint ¶¶ 40, 42, 44.

a.    *<u>Failure to Accommodate</u>*

"Failing to reasonably accommodate an employee's disability is a type of discrimination." *See* 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case of failure to accommodate under the ADA, "a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) the employer was aware of [his] disability; and (3) the employer failed to reasonably accommodate the disability." *Allen v. SouthCrest Hosp*., 455 F. App'x 827, 830 n.2 (10th Cir.

10

2011). A predicate for a failure to accommodate claim is that the employee make an adequate request for accommodation, thereby placing the employer on notice. It must be clear that the employee wants assistance for the disability. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011)("before an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice"). For purposes of the summary judgment motion, Defendants appear to challenge the third prong.

Plaintiff states that the audiologist's August 2012 was a reasonable request for accommodation that was denied. Response at 10–11.[6] The letter itself does not ask that Lockheed make any specific job-related modification for Plaintiff. It requests only that Lockheed "please review with others in your organization and employees" a list of nine "skills" that the audiologist stated were important in improving communication with "Plaintiff and anyone with hearing loss." Other than the letter, Plaintiff does not present evidence that he requested any specific job-related modification of his work responsibilities based on a disability.

Once Ms. Hardin received the audiologist's letter, she spoke with Mr. Hutchinson and asked that he review the audiologist's strategies with Plaintiff's work group. Mr. Hutchinson was receptive to using the strategies, he met with the work group, and he advised Plaintiff's co-workers of the audiologist's recommendations. The work group generally agreed to try the strategies although some co-workers believed that Plaintiff's hearing problems were selective.

The 2012 letter does not request that Lockheed do more than it did, i.e., review with co-workers the audiologist's strategies for improving communications with hearing impaired

---

[6] Although counsel argues that Plaintiff made multiple "requests" for accommodation ("he did make *requests* through his physician;" "[d]espite these *requests*"), Response at 10 (emphasis added), there appears to be just one letter from the audiologist upon which Plaintiff relies. *See* Plaintiff's Dep. at 26 (responding that there were no requests to Lockheed other than the August 2012 letter).

individuals. To interpret the letter as a request that all employees successfully employ each communication strategy at all times simply is not realistic or reasonable in a work setting or in general life. In other words, the 2012 letter is not a request that Lockheed monitor its employees' communication styles with Plaintiff. That request was not made. Requests for accommodation must be "sufficiently direct and specific" to give notice to the employer that an employee needs a special accommodation. *C.R. England*, 644 F.3d at 1049; *Dinse v. Carlisle Foodservice Products Inc.*, 541 F. App'x 885, 890 (10th Cir. 2013) ("An employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct and specific to give the employer notice of the needed accommodation.").

In sum, the following evidence is uncontested: 1) the audiologist's 2012 letter constituted Plaintiff's only request for an accommodation; 2) Lockheed adequately responded to the letter by discussing the suggested communication strategies with Plaintiff's work group; and 3) Plaintiff did not make a request for an accommodation in response to Ms. Hardin's inquiry and he told Ms. Hardin that he was "not that deaf." Hardin Aff. ¶ 8. Based on the undisputed evidence, the Court concludes that Plaintiff failed to raise a genuine dispute of material fact regarding Lockheed's alleged denial of a request for accommodation.

   b.   *Hostile Work Environment*

With respect to a hostile work environment claim, a plaintiff must present evidence sufficient "to show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1326-27 (10th Cir. 2004) (citation omitted).

A plaintiff also must establish that the alleged harassment was disability based. *See Aramburu v. Boeing Co*. 112 F.3d 1398, 1410 (10th Cir. 1997) (harassment not actionable if not based on disability).

Plaintiff's Response does not set out a separate argument supporting a hostile work environment claim although Plaintiff represents that his "supervisors and co-workers" harassed him and made his life "more difficult" after the audiologist provided Lockheed with the August 2012 letter. Response at 10–11. Notwithstanding Plaintiffs' argument about harassment by multiple supervisors and multiple co-workers, Plaintiff identifies only one employee, crew chief Booker Smith, as having turned his back to Plaintiff while Mr. Smith continued to talk to the crew during work meetings. Plaintiff also contends that Mr. Smith would start talking to Plaintiff and then would walk away while still talking to Plaintiff, and that Mr. Smith called to Plaintiff but would lower his voice or mouth words without sound while addressing Plaintiff. It is not clear how many times this may have occurred but it is undisputed that Plaintiff did not tell Mr. Smith about his problems hearing Mr. Smith.

In addition to these allegations, Plaintiff may rely on his testimony that unidentified co-workers unplugged or turned off his work telephone for an unspecified period of time in the summer of 2012. Again, Plaintiff admits that he did not report problems with his telephone to Lockheed and that he had no idea how long his telephone remained unplugged.

Plaintiff concedes that he turned down his telephone ringers at work, states "everybody turned their phone ringer down," and acknowledges that he turned down his hearing aids at work. Plaintiff's Dep. at 157. And, he does not dispute that employees complained to Mr. Hutchinson about Plaintiff having turned down his hearing aids at work.

Even accepting all of Plaintiff's allegations of harassment as true, the Court finds that the proffered evidence cannot objectively be viewed as sufficiently severe and pervasive to alter the terms and conditions of his employment. Moreover, Plaintiff's concessions about turning down or turning off his telephone ringer and his hearing aids while at work undermine a hostile work environment claim that is premised on Plaintiff's difficulty hearing communications by co-workers. Stated differently, no reasonably jury could find a hostile work environment based on Plaintiff's allegations. *Compare Ewing v. Doubletree*, Case No. 2:14-CV-526 DS, 2016 WL 750653, at *6 (D. Utah Feb. 24, 2016) (finding evidence of a hostile work environment based on a disability insufficient to show severe and pervasive harassment). The Court concludes that Plaintiff has failed to raise a genuine dispute of material fact to support a hostile work environment claim.

> c. *Discriminatory Termination of Employment*

"[I]n order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *C.R. England*, 644 F.3d at 1037–38 (citations omitted).

Once the plaintiff establishes the elements of a prima facie case of disability discrimination, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for taking an adverse employment action.[7] *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1217 (10th Cir. 2010). If the defendant satisfies its burden, the burden returns to the plaintiff to show a

---

[7] If a plaintiff offers no direct evidence of discrimination in support of the ADA claim, as is the case here, the court applies the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

genuine issue of material fact exists as to whether the defendant's stated reason for its employment action is pretextual. *Id.*

"Pretext exists when an employer does not honestly represent its reasons for terminating an employee." *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005). The plaintiff may demonstrate pretext by showing "that a discriminatory reason more likely motivated the employer or that the employer's proffered reason is unworthy of credence." *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007) (citations omitted). For example, "weaknesses, implausibilities, inconsistencies, incoherencies, or contractions" in the employer's proffered reason for its decision might make the reason unworthy of belief. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007) (citation omitted).

When deciding the question of pretext, the Court considers the evidence as a whole. *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002). The Court examines the facts "as they appear to the person making the decision to terminate plaintiff." *Kendrick v. Penske Transp. Servis., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000). Thus, "the relevant inquiry is not whether [the defendant's] proffered reasons were wise, fair[,] or correct, but whether [the defendant] honestly believed those reasons and acted in good faith upon those beliefs." *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004) (citation omitted).

For purposes of summary judgment, Lockheed does not dispute that Plaintiff can satisfy the prima facie elements of ADA discrimination. Motion at 10. Lockheed primarily argues that Plaintiff's ADA discriminatory termination claim must fail because Lockheed had legitimate, nondiscriminatory, and nonretaliatory reasons related to Plaintiff's poor performance for terminating Plaintiff's employment and because Plaintiff has no evidence of pretext.

Plaintiff concedes that Lockheed has articulated a legitimate, nondiscriminatory reason for terminating his employment although Plaintiff disagrees that his performance was substandard. Response at 9. Plaintiff contends that Lockheed's reasons for the discharge decision should not be accepted because Plaintiff has evidence of pretext.

Plaintiff's evidence of pretext consists of the following: 1) Plaintiff had "no major performance issues" from 2009 to 2012; 2) the audiologist's letter was discussed with Plaintiff's supervisor and his co-workers in August 2012, and Plaintiff encountered harassment after discussion of the letter; 3) during Plaintiff's 2013 PIP, Mr. Hutchinson brought up complaints of Plaintiff having turned down the volume of his hearing aids; 4) Lockheed terminated Plaintiff's employment based on low productivity numbers notwithstanding Plaintiff's evidence that co-workers had inflated their productivity numbers; and 5) Lockheed terminated Plaintiff's employment "just under two months of complaining about discrimination to Defendant's HR Department." Response at 9–10.

Contrary to Plaintiff's position about his work performance, the unrebutted evidence is that Mr. Hutchinson began counseling Plaintiff as early as May 2012 about performance issues starting in late 2011. Moreover, these same performance issues related to work crew complaints about their attempts to communicate with Plaintiff, including complaints that Plaintiff had turned off or turned down his hearing aids, did not answer common work telephones, and had turned down his telephone ringer.

These workplace concerns and complaints about Plaintiff's performance, as well as the July 2012 written warning documenting these problems, predated the August 2012 letter from Plaintiff's audiologist. Thus, it is uncontested that the many performance issues set forth in the July 2012 written warning had nothing to do with Lockheed's receipt of and response to the

August 2012 letter. With respect to Plaintiff's argument about a single co-worker's alleged harassment *after* receipt of the August 2012 letter, the Court has already determined that even accepting Plaintiff's allegations as true, they are not evidence of a hostile work environment. Moreover, Plaintiff does not explain why Mr. Smith's supposed actions in failing to communicate properly with Plaintiff in 2012 is evidence that calls into question the honesty or the good faith of Lockheed's discharge decision. For example, there is no evidence that Mr. Smith, the alleged harasser, was Plaintiff's supervisor or that Mr. Smith had any input in the termination decision.

Similarly, Plaintiff offers no explanation why Mr. Hutchinson's discussions, during Plaintiff's PIP about Plaintiff having turned down his hearing aids at work, are evidence of pretext. The PIP counseling sessions occurred in 2013, after two written warnings had been issued to Plaintiff, one of which addressed complaints about Plaintiff turning down his hearing aids. The Court has difficulty understanding how discussions about Plaintiff's use of his hearing aids during his PIP amount to evidence of pretext, particularly where Plaintiff admitted he turned down his hearing aids at work and where there are corresponding documented complaints by co-workers of this very problem.

Plaintiff's fourth type of evidence in support of pretext is that he was unfairly discharged for low productivity when two co-workers remained on the job after having falsely inflated their productivity numbers. According to Plaintiff, since the other two employees' productivity numbers were false and were eventually corrected after Lockheed investigated Plaintiff's grievance, Lockheed's stated reason for terminating Plaintiff's employment was inconsistently applied and should not be believed.

The pertinent law does not support Plaintiff's position. It is well established that an employer does not need to prove the reasons it offers to justify a decision to terminate employment were wise, fair, or correct. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir.1999), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Instead, the court's inquiry is limited to whether the defendant honestly believed the reasons it offered to explain its decision and whether it acted in good faith as to those beliefs. *Johnson*, 594 F.3d at 1211 (citation omitted). *See, e.g., Kendall v. Watkins*, 998 F.2d 848, 851 (10th Cir. 1993) ("Merely showing that the reason articulated by the employer is wrong or unreasonable will not suffice."), *cert. denied*, 510 U.S. 1120 (1994); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) ("arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are "*right* but whether the employer's description of its reasons is *honest.*") (citation omitted) (emphasis in original).

Here, Mr. Hutchinson supplied ample evidence, in two written warnings issued over a seven or eight month period and a 90-day PIP, supporting his honest belief that Plaintiff's performance, while having improved in some areas, was still unsatisfactory. Mr. Hutchinson concluded, after allowing Plaintiff months of time to improve, that Plaintiff's productivity remained significantly lower than the work output of his co-workers. Plaintiff was the least productive crew member on his crew by a significant margin.

While Mr. Hutchinson admitted that he made corrections to some "overlaps on some of the work orders for the man-hours counts," the amendments were minor in nature ("the hours may have overlapped by 15 minutes from this work order to that work order") and "didn't affect the numbers overall." Hutchinson Dep. at 30–31.  Mr. Hutchinson also explained that he had

corrected some overlapping times for a number of employees, including those of Plaintiff. According to Mr. Hutchinson, the adjustments did not change the overall outcome of Plaintiff's PIP and did not improve Plaintiff's productivity numbers.

Thus, the evidence supports a conclusion that Mr. Hutchinson honestly believed Plaintiff's consistently low productivity justified termination of his employment. Stated differently, Lockheed's evidence of Plaintiff's substandard performance over a period of nine months is not so weak or implausible that a rational factfinder could infer that Lockheed's stated reason for terminating Plaintiff's employment must have been pretextual.

Plaintiff's argument about productivity computations might also be construed as an attempt to show that he was treated differently than other similarly situated, unprotected employees. *See Suitt v. Honeywell Consumer Products Group,* 562 F. Supp. 2d 1355, 1364–65 (D. Utah 2008). But, Plaintiff does not argue that the two or three employees who supposedly overcharged their time were similarly situated to him.

In addition, Plaintiff generally disagrees with Defendant's stated reasons for the termination decision because he believes he was performing satisfactorily. *See, e.g.,* Plaintiff's Dep. at 49, 157–58. However, Plaintiff's subjective beliefs about his job performance are not evidence of pretext. "It is the managers perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996), *cert. denied*, 519 U.S. 1056 (1997).

Plaintiff's fifth type of evidence of pretext goes to the timing of Lockheed's termination decision, which Plaintiff argues occurred less than two months after Plaintiff complained of disability discrimination to HR in March 2013. This is another overstatement of the evidence. Plaintiff received counseling about substandard performance that occurred in late 2011, and

received written warnings in July 2012, and then again, in January 2013, at which point he was placed on a PIP. In the July 2012 written warning, Mr. Hutchinson advised Plaintiff that, after repeated counseling, Plaintiff still had not adequately improved his performance. Thus, he received the first written warning which expressly warned Plaintiff that his employment could be terminated if he failed to "significantly improve." July 2012 written warning at 3. Plaintiff received the same type of warning in January 2013, which then led to the PIP. Thus, the evidence supports a finding that Lockheed's termination decision did not merely follow on the heels of Plaintiff's discrimination complaints. Rather, Plaintiff's discrimination complaints followed nine months of counseling sessions and warnings to Plaintiff about his inadequate performance.

Having rejected all of Plaintiff's arguments regarding pretext, the Court concludes that he has failed to establish a genuine issue of material fact as to whether Lockheed's proffered reasons for terminating his employment were pretextual. Therefore, the Court will grant summary judgment in favor of Lockheed on Plaintiff's ADA discrimination claims.

II.   Retaliation under Title VII

The Tenth Circuit has recognized three elements for a Title VII retaliation claim: (1) the plaintiff engaged in protected opposition to discrimination; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *O'Neal v. Ferguson Constr. Co*., 237 F.3d 1248, 1252 (10th Cir. 2001).

"Protected activities fall into two distinct categories: participation or opposition." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1213 (2009). The "participation clause" provides that an employer may not retaliate against an employee "because [the employee] has ... participated in any manner in an investigation,

proceeding, or hearing under" Title VII. *Id.* (citing 42 U.S.C.A. § 2000e–3(a)). The "opposition clause" provides that an employer may not retaliate against an employee "because he has opposed any practice made an unlawful employment practice" by Title VII. *Id.*

Plaintiff expressly sets forth a retaliation claim under Title VII rather than the ADA. Complaint ¶¶ 47–52. Lockheed assumed that Plaintiff had abandoned a Title VII retaliation claim because Plaintiff failed to identify any protected activity under Title VII. Motion 2 at 2 n.2, But, Plaintiff insists that he brings the retaliation claim under Title VII. Response at 12–13. In support of the Title VII retaliation claim, Plaintiff identifies his complaints of disability discrimination as the protective activity. *Id.*

Title VII clearly prohibits retaliation against an employee because of that employee's participation *in a Title VII* proceeding or investigation or because of that employee's opposition to unlawful discrimination *under Title VII*. 42 U.S.C.A. § 2000e–3(a). Here, there is no evidence that Plaintiff participated in a Title VII proceeding or that he lodged complaints concerning activities prohibited by Title VII. Because Plaintiff has failed to identify a protected activity under Title VII, he cannot satisfy a prima facie case of Title VII retaliation. Therefore, the Court will grant summary judgment in favor of Lockheed on Plaintiff's Title VII retaliation claim.

Even if Plaintiff had brought a retaliation claim under the ADA, the claim would not survive summary judgment with little more than the allegations of temporal proximity between the protected activity (disability complaints in March 2013) and the termination of his employment (April 2013). The Court already disposed of the temporal proximity argument when it addressed Plaintiff's evidence of pretext[8] in relation to the ADA discrimination claim. *See*

---

[8] ADA retaliation claims on summary judgment, like ADA discrimination claims, are subject to the *McDonnell Douglas* burden shifting framework. *See Selenke*, 248 F.3d at 1264. Thus, once a plaintiff makes out a prima facie case of retaliation, if the employer presents a nonretaliatory explanation for its action, the plaintiff must raise questions of fact that the employer's stated reasons are a pretext for unlawful retaliation.

discussion *supra.* Moreover, the Tenth Circuit Court of Appeals has held that close proximity between the protective activity and the adverse employment action, standing alone, will not raise a genuine dispute of material fact as to pretext. *See Bergersen v. Shelter Mut. Ins. Co.,* 229 F. App'x 750, 755 (10th Cir. 2007) (finding that the plaintiff's claim of temporal proximity, standing alone, was insufficient to raise a genuine issue of pretext); *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1240 (10th Cir. 2004) (temporal proximity might satisfy prima facie elements of claim but is not enough to demonstrate pretext). Plaintiff offers no other evidence to show pretext except to argue that "complaints about Plaintiff's disability were used as part of Plaintiff's deficiencies in the PIP prior to his termination." Response at 13. The Court does not find this argument clear or persuasive. *See* discussion *supra*. The Court concludes that any attempted amendment of the Complaint to add an ADA retaliation claim would be futile.

III.   Retaliation under the False Claims Act (FCA)

The FCA imposes liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1), or who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government," § 3729(a)(2). "Since employees will often be in the best position to report frauds perpetrated by their employers, the FCA includes 'whistleblower' provisions that protect whistleblowing employees from retaliation. *McBride v. Peak Wellness Ctr., Inc.,* 688 F.3d 698, 703 (10th Cir. 2012).

The FCA provides, in pertinent part, that an employee is entitled to specific relief if the employee was discharged or "in any other manner discriminated against … ***because of*** lawful acts done by the employee … in furtherance of an action under this section or other efforts to

stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1) (emphasis added). To be protected by the FCA, an employee must put his employer "on notice that [the employee] was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government." McBride, 688 F.3d at 704. In *Randazzo v. CH2M Hill, Inc.*, No. 13-CV-03276-MSK-KLM, 2014 WL 4697131, at *4 (D. Colo. Sept. 22, 2014*), appeal dismissed* (Aug. 7, 2015), the federal Colorado District Court observed that to obtain protection under the FCA, an employee needs to "identify particular conduct to the employer that could constitute a false claim and clearly inform the employer of her belief that such conduct is both unlawful and a fraud against the United States."

Plaintiff contends that his complaint to Mr. Hutchinson and to Lockheed's HR about employees' fraudulent mischarging of time on work orders for the federal government is sufficient to show that he is entitled to protection under the FCA. Response at 11. Even assuming Plaintiff's complaints are sufficient to give notice of fraud to Lockheed, the Court notes that Plaintiff has offered no evidence that Lockheed terminated his employment ***because of*** the complaints. Plaintiff's two paragraphs of argument concerning his FCA claim, Response at 11–12, contain no discussion that Plaintiff's employment was terminated because of his complaints.

As stated previously, Plaintiff's performance issues were well documented and spanned a period of nine months. Most, if not all, of the many identified performance deficiencies predated Plaintiff's complaints about co-workers having mischarged their time. He had already received several written warnings advising him that his employment could be terminated if he did not demonstrate significant improvement in a number of areas. Plaintiff had been placed on the PIP that led to his termination before he complained about possible mischarging by coworkers. Thus,

there is no inference that Lockheed fabricated problems with Plaintiff's work performance in response to Plaintiff's identification of alleged fraudulent mischarging.

It may be that Plaintiff intended to rely on temporal proximity between his complaints and the termination of his employment as evidence of causation. However, the Court will not make that leap under circumstances where the evidence is undisputed that Lockheed's disciplinary actions were documented and had escalated before Plaintiff made any complaints.

Because Plaintiff has not raised a genuine dispute of material fact to show that that Lockheed terminated his employment because of complaints he made, the Court will grant summary judgment in favor of Lockheed on the FCA claim.

IT IS THEREFORE ORDERED that DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT (Doc. No. 35) is granted with the result that Plaintiff's Complaint and all of his claims will be dismissed with prejudice by a separate Summary Judgment.


_____
SENIOR UNITED STATES DISTRICT JUDGE